## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DEQUANTES LAMAR,

                            Plaintiffs,

v.

THINK IT'S A GAME
ENTERTAINMENT, LLC.; FLY
MERCHANDISE ENTERPRISES,
LLC and GIRVAN HENRY,

                            Defendants.

CIVIL ACTION

FILE NO.: _____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DAMAGES

**COMES NOW** Plaintiff Dequantes Lamar professionally known as "Rich Homie Quan" (hereinafter, "Artist"), by and through his undersigned counsel, files this Complaint and respectfully asserts the following claims against Defendants, Think It's A Game Entertainment, LLC (hereinafter, "TIG"), Fly Merchandise Enterprises, LLC (hereinafter, "Fly Merchandise"), and Girvan Henry (hereinafter, "Henry"). In support thereof, Plaintiff allege as follows:

## I.  INTRODUCTION

Artist has achieved a substantial level of commercial success with the commercial release of his hit singles, "Type of Way"- recently certified Gold by the Recording Industry Association of America and "Flex" having sold approximately 300,000 copies.  Artist and TIG signed a memorandum purporting to be a recording agreement.  Artist claims the memorandum signed by Artist and TIG is unenforceable because it lacked material terms and the parties had no agreement with respect to a number of material terms of the proposed agreement.  Notwithstanding this claim, TIG and Artist have worked together and released several albums and hit singles in partnership with TIG to exploit the master recordings featuring Artist. Although Henry's company has exploited the albums, he and his company TIG have failed to properly account and pay Artist.

Henry's company Fly Merchandise also fraudulently represented to the United States Patent and Trademark Office that it owned a logo owned by Artist and the logo was used in commerce to sell merchandise.  Artist claims damages from Fly Merchandise because Fly Merchandise had no rights to use Artist's name within the logo.

Artist requests the Court to declare the TIG Memorandum unenforceable, that Artist and TIG operated a partnership that has been terminated, that Plaintiffs have incurred in excess of $2,000,000 in damages as a result of Henry and his various company's misconduct and that Artist is due an accounting from Defendants.

## II.   PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Dequantes Lamar, professionally known as "Rich Homie Quan" is an internationally acclaimed, award-winning songwriter and rap artist.  He is a citizen and resident of Atlanta, Fulton County, Georgia.

2.     Defendant Think It's A Game, LLC is a domestic limited liability company conducting business at 1888 Emery Street, Suite 111, Atlanta, Fulton County, Georgia.

3.     Defendant Fly Merchandise Enterprises, LLC, is a domestic limited liability company conducting business at 1888 Emery Street, Suite 111, Atlanta, Fulton County, Georgia.

4.     Defendant Girvan Henry is an individual residing at 2649 Jacobs Crest Cove, Grayson, Georgia.  Henry is the CEO and owner of Defendant TIG.

4844-5865-2454.1                              -3-

5.    Jurisdiction and venue are proper in this court.

6.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1337 and 1338(a).  This Court also has subject matter jurisdiction to hear Plaintiff's state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) as well as under general principles of supplemental and pendent jurisdiction.

7.    This Court has personal jurisdiction over Defendants pursuant to O.C.G.A. § 9-10-91 and federal law because Defendants are soliciting and transacting business in the State of Georgia and in this judicial district; Defendants derive substantial revenue from services rendered in the State of Georgia; the acts of infringement complained of herein occurred in the State of Georgia and in this judicial district; and the Defendants have caused injury within the State of Georgia and in this judicial district.  The causes of action set forth herein arise from or relate to Defendants' activities in Georgia.  The exercise of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice.

8.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391and 1400 because Defendant Henry resides in this district, Defendants TIG and Fly Merchandise Enterprises' places of business are located in this

district, and a substantial part of the events, acts and/or omissions giving rise to the claims herein occurred in this district.

### III.    BACKGROUND

9.    On July 27, 2012, Artist and TIG signed a document purporting to provide Artist's exclusive services as an artist, producer, performer, and songwriter to TIG ("TIG Memorandum").

10.    The TIG Memorandum lacked material terms to obligate Artist to TIG for Artist's exclusive services of an artist, producer, performer and songwriter.

11.    The TIG Memorandum did not include material terms found in a typical recording agreement and/or songwriter agreement.  Among other material terms, the TIG Memorandum specifically excluded definitions, an auditing provision, as well as material terms concerning the treatment of publishing and payment of album advances.

12.    The term of the purported TIG Memorandum was for Artist to provide his music recording services to TIG for one (1) initial Album with as many as five (5) option periods.

13.    In exchange for Artist's services, and pursuant to the TIG Memorandum, TIG agreed, *inter alia*, to (1) pay Artist a recoupable advance

of $19,200.00 within one year from the date of execution of the TIG Memorandum; and (2) pay Artist fifty-percent (50%) of TIG's Net Profits earned from Company's revenue from the exploitation of Masters recorded by Artist as provided in the TIG Memorandum.

14.    The TIG Memorandum also purported to grant TIG the acquisition in *perpetuity* of one hundred percent (100%) "of all administration rights throughout the Territory in and to all compositions written, owned, acquired, or controlled, in whole or in part by [Artist], prior to or during the Term," and "an undivided fifty percent (50%) of all right, title, and interest to the copyright in all such compositions."

15.    To date, TIG has not paid Artist the full $19,200.00 advance.

16.    TIG's failure to pay the full advance represents TIG's failure of consideration for any purported agreement with Artist.

17.    To date, TIG has not paid Artist fifty-percent (50%) of TIG's Net Profits earned from TIG's exploitation of Masters recorded by Artist.

18.    Artist did not have the benefit of legal representation at the time he entered into the TIG Memorandum, nor was he advised to seek counsel.

19.    Prior to signing the TIG Memorandum, Artist had already recorded certain master recordings for which Artist was the owner ("Prior Recorded Masters").   Artist did not transfer ownership of said Prior Recorded Masters to TIG in the TIG Memorandum.

20.    Subsequent to signing the TIG Memorandum, TIG improperly claimed ownership of Artist's Prior Recorded Master entitled "I Go In On Every Song" which was commercially released on or about April 4, 2012 by Artist.

21.    On August 27, 2012, Artist, through TIG, released the master recording entitled "Still Goin In."

22.    "Still Goin In" was offered for sale through digital outlets and TIG derived income from same.

23.    On December 11, 2012, Defendant Girvan Henry individually entered into an Agreement with recording artist Trinidad James' own record label Gold Gang Music Group, LLC (hereinafter, "Gold Gang") and The Island Def Jam Music Group, a division of Universal Music Group (hereinafter, "Def Jam") (hereinafter, "Def Jam Agreement").

24.    TIG was not a party to the Def Jam Agreement, nor was it mentioned anywhere in the Def Jam Agreement.

25.     Henry, individually, was not a party to the TIG Memorandum and had no rights in and to Artist's master recordings.

26.     As a part of the Def Jam Agreement, Henry and Gold Gang received a $550,000.00 advance against royalties.

27.     Shortly after Henry and Gold Gang entered into the Def Jam Agreement, Def Jam attempted to enter into a separate Artist Agreement with Artist; however no such deal was ever consummated.

28.     Upon information and belief, on or about February 1, 2013, Def Jam, through Universal Music, wired $275,000.00 of the $550,000.00 advance to Think It's a Game Entertainment, Inc.'s/Gold Gang's bank account.

29.     Upon information and belief, on or about February 4, 2013, TIG transferred the $275,000.00 advance from Def Jam to an account solely controlled by TIG.

30.     Despite the provision in the TIG Memorandum, wherein TIG agreed to pay Artist fifty-percent (50%) of TIG's Net Profits earned directly from Masters recorded by Artist, Henry has not accounted to or paid Artist his share of the monies Henry received from Def Jam.

31.    On February 6, 2013, Henry filed a trademark application for "Rich Homie Quan" in U.S. Serial Application No. 85/842,517 with the U.S. Patent & Trademark Office, which subsequently received trademark registration in U.S. Reg. No. 4,483,756.

32.    In Henry's trademark application, Henry provided a description of categories in which he sought trademark protection.  Those categories included, "digital materials, namely, musical download featuring musical artists; digital music downloadable from the internet; downloadable MP3 files and MP3 recordings featuring musical artist; and entertainment services, namely, live musical performances by a solo recording artist."

33.    In his trademark application, Henry additionally represented that the name "Rich Homie Quan" was first used anywhere on March 1, 2012 and was first used in commerce on December 12, 2012.

34.    Artist was not listed on Henry's trademark application, despite the fact that he had been using the stage name, "Rich Homie Quan" to release Albums commercially prior to the TIG Memorandum.

35.    "Rich Homie Quan" is the stage name created by Artist—not Henry.

36.    At the time Henry filed the trademark application, Artist had not authorized or consented to any third-party, including Henry, to file for trademark registration of his stage name "Rich Homie Quan," which had been in use commercially by Artist since 2012.

37.    On or about February 8, 2013, Artist, through TIG, released the album entitled "Still Goin In (Reloaded)" through Empire Distribution based in San Francisco, California.

38.    "Still Goin In (Reloaded)" was offered for sale through digital outlets and TIG derived an income from same.

39.    After TIG's receipt of non-refundable monies from Def Jam earned by TIG from the exploitation of Artist's masters, TIG misappropriated said funds instead of paying Artist his rightful monies due pursuant to the TIG Memorandum.

40.    Henry and TIG misappropriated Artist's funds and used said funds to purchase specific assets for which Henry, TIG or third parties, acting on their behalf, hold for TIG and Henry's behalf.

41.    Specifically, on or about March 28, 2013, TIG transferred $145,700.51 to McCalla Raymer LLC to purchase real estate located at 244

Peters Street #CUI, Atlanta, Georgia 30313 in the name of TIG Construction, LLC (hereinafter, the "Peter Street Property").

42.     Defendant Girvan Henry is the Owner of TIG Construction, LLC.

43.     The funds used for the transfer to McCalla Raymer included funds from the advance derived from the Def Jam Agreement, of which a sizeable portion was Artist's share of monies.

44.     The Artist's funds misappropriated by TIG were used to purchase the Peters Street Property for $159,500.00.

45.     Artist has no ownership interest in TIG Construction, LLC. Artist claims an equitable interest in the Peters Street Property.

46.     On September 27, 2013, Def Jam, through Henry and artist Trinidad James' Gold Gang, caused to be released the Artist's hit single entitled "Type of Way."

47.     Artist has never entered into a contractual relationship with Gold Gang nor Def Jam.

48.     The "Type of Way" single went on to sell over 500,000 copies and was ultimately certified Gold by the Recording Industry Association of America (RIAA).

49.    To date, "Type of Way" is the only Master that was released pursuant to the Def Jam Agreement and Artist was not properly accounted to nor paid its share of the revenue earned from the "Type of Way" single.

50.    Other than the Master entitled "Type of Way", neither Henry nor Gold Gang purported to provide Def Jam the rights to exploit any other master recording of Artist.

51.    On November 26, 2013, Artist, through TIG, released the album entitled "I Promise I Will Never Stop Going In."

52.    "I Promise I Will Never Stop Going In" was offered for sale through digital outlets and TIG derived income from same.

53.    On February 27, 2014, Fly Merchandise Enterprises, LLC filed a trademark application for the Rich Homie Quan Est. 1989 logo in U.S. Serial Application No. 86/206,645 before the U.S. Patent & Trademark Office, which subsequently secured trademark registration in U.S. Registration No. 4,746,133.

54.    In Fly Merchandise Enterprises, LLC's trademark application, the company provided a description of categories in which it sought trademark protection. Those categories included, "entertainment marketing services, namely, marketing, promotion and advertising for

independent recording artists; and entertainment marketing services, namely, marketing, promotion and advertising for recording and performing artists."

55.    Artist believes that Henry, through Fly Merchandise Enterprises, LLC, was the applicant for the Rich Homie Quan Est. 1989 logo trademark application.

56.    The logo for which the trademark application was filed appears below:



57.    This trademark application reflected that the first use of the logo anywhere was January 30, 2013 and the first use in commerce was March 5, 2013.

58.    The aforementioned logo was created for Artist as a work for hire and Artist owns the logo—not Fly Merchandise Enterprises.

59.     The   trademark   application   filed   by   Fly   Merchandise Enterprises' trademark application did not list or identify Artist.

60.     Upon information and belief, Henry improperly incorporated Artist's name in its mark registered through an entity controlled by Henry and later exploited the mark unlawfully and retained all monies earned therefrom.

61.     Artist did not consent or authorize the filing of this logo by Henry and Fly Merchandise Enterprises, incorporating the use of his stage name, "Rich Homie Quan", with the U.S. Patent & Trademark Office.

62.     Upon information and belief, Henry, both individually and through   his   various   entities,   used   monies   earned   from   the misappropriation of Artist's name to acquire certain assets.

63.     The trademark application lists Fly Merchandise Enterprises, LLC as the owner of the logo.  Henry is the principal of Fly Merchandise Enterprises, LLC.

64.     Artist does not have an ownership interest in TIG 244 Peters, LLC although monies from the exploitation of his name was used to purchase assets currently held by TIG 244 Peters, LLC.

65.     On April 28, 2015, Artist, through TIG, released the album entitled "If You Ever Think I Will Stop Goin' In Ask Double R."

66.     "If You Ever Think I Will Stop Goin' In Ask Double R" was offered for sale through digital outlets and TIG derived an income from same.

67.     The album "If You Ever Think I Will Stop Goin' In Ask Double R" contains the hit single entitled "Flex."

68.     The hit single entitled "Flex" was a commercial success and has sold approximately 300,000 copies to date.

69.     TIG released master recordings featuring Artist entitled, "I Go In On Every Song", "Still Going In"; "Still Going In (Reloaded)"; "I Promise I Will Never Stop Going In"; and "If You Ever Think I Will Stop Goin' In Ask Double R" through Empire Distribution.

70.     Artist has released at least four (4) Albums under the TIG Memorandum.

71.     To date, Artist has not been compensated according to the terms of the TIG Memorandum.