## COUNT I

## DECLARATORY JUDGMENT THAT THE TIG MEMORANDUM IS UNENFORCEABLE BECAUSE OF LACK OF MATERIAL TERMS

72. Plaintiff repeats and realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

73. Artist seeks a declaratory judgment holding that the TIG Memorandum is not enforceable because it lacks material terms.

74. The TIG Memorandum fails to address items commonly found in standard music industry agreements and co-publishing agreements, specifically definitions of material terms and an accounting provision, among other provisions.

75. The parties failed to agree to have a meeting of the minds as to material terms that were not addressed in the TIG Memorandum.

76. The failure to agree to material terms in the TIG Memorandum renders the TIG Memorandum unenforceable.

## COUNT II

## DECLARATORY JUDGMENT THAT THE TIG MEMORANDUM IS AN AT-WILL PARTNERSHIP

77. Plaintiff repeats and realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

78. Pursuant to O.C.G.A. § 14-8-6 (a), a partnership is an association of two or more persons to carry on as co-owners, a business for profit.

79. Pursuant to the TIG Memorandum, TIG agreed to split, on a 50/50 basis, the Net Profits earned directly from Masters recorded by Artist;

80. The lack of material terms in the TIG Memorandum in order to be considered a recording or co-publishing agreement, as well as the profit sharing arrangement between Artist and TIG constitutes a partnership pursuant to O.C.G.A. § 14-8-6 (a).

81. By virtue of having filed this Complaint, Defendants are placed on notice that Artist terminates the partnership between the Artist and TIG.

82. As a partner, TIG owes a duty to Artist.

83. TIG has breached its duty to Artist by, among other things, failing to account and pay Artist.

84. Artist has incurred damages as a result of TIG's breach.

**COUNT III**

**RESCISSION OF THE TIG MEMORANDUM**

85. Plaintiff repeats and realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

86. Pursuant to the TIG Memorandum, TIG agreed, *inter alia*, to (1) pay Artist a recoupable advance of $19,200.00 within one year from the date of execution of the TIG Memorandum and (2) pay Artist fifty-percent (50%) of TIG's Net Profits earned directly from Masters recorded by Artist.

87. TIG has improperly cross-collateralized Artist's publishing, Ancillary Share, and record royalties pursuant to the TIG Memorandum.

88. On August 14, 2014, Artist, through his counsel, sent Defendants TIG and Henry a letter ("Notice of Breach") putting them on notice that in the two years since the TIG memorandum was signed, TIG

has failed to account and pay Artist as provided in the TIG memorandum, despite the fact that Artist has fulfilled his obligations.

89. The First Notice of Breach further indicated that if Defendants did not cure the breach of the TIG Memorandum within thirty (30) days, the Agreement and all of Defendants' rights thereunder would automatically terminate.

90. Defendants, having failed to cure after the Notice of Breach, on March 27, 2015 Artist, through his counsel, sent Defendants a second letter ("Notice of Termination"), terminating his relationship with TIG effective immediately.

91. To date, TIG has not paid Artist the full $19,200.00 advance.

92. To date, TIG has not paid Artist fifty-percent (50%) of TIG's Net Profits earned directly from Masters recorded by Artist.

93. To date, TIG has not provided an accurate and complete accounting to Artist, despite numerous requests.

94. The Defendants' total failure to perform constitutes a total breach of the TIG Memorandum, authorizing rescission under OCGA § 13-4-62.

95. In the alternative, Artist has no further obligation to TIG as a result of TIG's failure to cure.

## COUNT IV

## BREACH OF CONTRACT (IN THE ALTERNATIVE)

96. Plaintiff repeats and realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

97. If the Court determines that the TIG Memorandum constitutes a binding agreement between Artist and TIG, Artist has fully performed any and all obligations required by him pursuant to the Agreement.

98. Despite repeated demands by Artist, Defendant TIG has breached the TIG Memorandum and Artist has incurred damages by, inter alia, (1) failing to pay Artist an amount believed to exceed $1,000,000.00 and (2) failing to properly account and pay royalties to Artist for monies earned by Artist's recordings on a quarterly basis, as provided in the TIG Memorandum.

## COUNT V

## BREACH OF FIDUCIARY DUTY TO ARTIST

99. Plaintiff repeats and realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

100. The TIG Memorandum, a purported partnership, created a fiduciary duty on behalf of Henry to act in the best interest of Artist with regard to the exploitation of the assets contemplated in the TIG Memorandum.

101. Henry breached his fiduciary duty to Artist that has caused damage to Artist in an amount to be determined at trial, but in no event less than $1,000,000.00.

## COUNT VI

## DECLARATORY JUDGMENT & PETITION TO CANCEL DEFENDANTS' REGISTRATIONS OF PLAINTIFF'S STAGE NAME AND LOGO MARKS BASED ON FRAUD BEFORE THE USPTO

102. Plaintiff repeats and realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

103. On February 6, 2013, Defendant Henry filed a trademark application for "Rich Homie Quan" in U.S. Serial Application No. 85/842,517 with the U.S. Patent & Trademark Office, which subsequently received trademark registration in U.S. Reg. No. 4,483,756.

104. In Henry's trademark application, Henry provided a description of categories in which he sought trademark protection. Those categories included, "digital materials, namely, musical download featuring musical artists; digital music downloadable from the internet; downloadable MP3 files and MP3 recordings featuring musical artist; and entertainment services, namely, live musical performances by a solo recording artist."

105. In his trademark application, Henry additionally represented that the name "Rich Homie Quan" was first used anywhere on March 1, 2012 and was first used in commerce on December 12, 2012.

106. Artist was not listed on Henry's trademark application, despite the fact that he had been using the stage name, "Rich Homie Quan" to release Albums commercially prior to the TIG Memorandum.

107. At the time Henry filed the trademark application, Artist had not authorized any third party, including Henry, to trademark the term,

"Rich Homie Quan," which had been in use commercially by Artist since 2012.

108. On February 27, 2014, Fly Merchandise Enterprises, LLC filed a trademark for the Rich Homie Quan Est. 1989 logo in U.S. Serial Application No. 86/206,645 before the U.S. Patent & Trademark Office, which subsequently secured trademark registration in U.S. Registration No. 4,746,133.

109. The logo for which the trademark application was filed appears below:




("Rich Homie Quan Logo").

110. In Fly Merchandise Enterprises, LLC's trademark application, the company provided a description of categories in which it sought trademark protection. Those categories included, "entertainment marketing services, namely, marketing, promotion and advertising for

independent recording artists; and entertainment marketing services, namely, marketing, promotion and advertising for recording and performing artists."

111. This trademark application reflected that the first use of the Rich Homie Quan Logo anywhere was January 30, 2013 and the first use in commerce was March 5, 2013.

112. Upon information and belief, Henry improperly incorporated Artist's name in Artist's Rich Homie Quan Logo registered through an entity controlled by Henry. The address on the trademark application for Fly Merchandise Enterprises, LLC is 890 Metropolitan Parkway, Atlanta, Georgia 30310.

113. Artist created the stage name "Rich Homie Quan" and the Rich Homie Quan Logo is owned by Artist– not Henry or Fly Merchandise Enterprises.

114. Artist was not listed or identified as the creator, author or owner of either service mark subject to the trademark registrations at-issue.

115. Artist did not consent or authorize third-parties such as Henry or Fly Merchandise Enterprises to file either the stage name "Rich Homie

Quan" or the Rich Homie Quan Logo incorporating his stage name with the U.S. Patent & Trademark Office on his behalf.

116. Artist is well known in the public eye as his stage name "Rich Homie Quan," which as a service mark, is a source identifier distinguishing his services as an entertainer and artist.

117. Artist has long used his "Rich Homie Quan" service mark in connection with entertainment services and related musical recordings.

118. Artist has long advertised, promoted and otherwise marketed his "Rich Homie Quan" service mark in connection with entertainment services and related musical recordings.

119. The public associates the Rich Homie Quan Logo to be affiliated with, endorsed by or sponsored by Artist in connection with entertainment services. The Rich Homie Quan Logo is a source identifier distinguishing Artist's services as an entertainer and artist.

120. Artist has long used his Rich Homie Quan Logo in connection with entertainment services and related musical recordings. Artist has long advertised, promoted and otherwise marketed his Rich Homie Quan Logo in connection with entertainment services and related musical recordings

121. Defendants' committed fraud before the USPTO for improperly registering Artist's Rich Homie Quan's service mark and logo without Artist's authorization or consent. Defendants were not the proper owner, applicant or representative party of the applications in U.S. Serial Application No. 85/842,517 with the U.S. Patent & Trademark Office, which subsequently received trademark registration in U.S. Reg. No. 4,483,756 or U.S. Serial Application No. 86/206,645 before the U.S. Patent & Trademark Office, which subsequently secured trademark registration in U.S. Registration No. 4,746,133 ("RICH HOMIE QUAN Registrations").

122. Defendants were not an authorized agent or party granted permission to file or seek the RICH HOMIE QUAN Registrations on behalf of the Artist. As a result, Defendants have misled Artist.

123. As a result of Defendants' fraudulent actions, Artist's reputation, brand value, and commercial magnetism have been damaged in an amount to be ascertained and determined.

124. As a result of Defendants' fraudulent actions, Defendants have reaped financial gain in purporting to be the rightful owner of intellectual property rights (i.e., trademarks) of Artist without Artist's authorization or consent in business transactions with third-parties.

125. Based on the foregoing, Artist requests that the Court cancel the RICH HOMIE QUAN Registrations as permissible under Section 1119 of Title 15 of the Lanham Act, see 15 U.S.C.A. § 1119, or alternatively, that the Court declare pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 that Artist is the rightful owner of the RICH HOMIE QUAN Registrations and that Defendants transfer and assign over all rights, title and interest in ownership of the RICH HOMIE QUAN Registrations to Artist.

**COUNT VII**

**UNFAIR COMPETITION, 15 U.S.C. § 1125(a)**

126. Plaintiff repeats and realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

127. Artist has long used his "Rich Homie Quan" service mark and his Rich Homie Quan Logo ("RICH HOMIE QUAN Marks") in connection with entertainment services and related musical recordings.

128. Artist has long advertised, promoted and otherwise marketed his RICH HOMIE QUAN Marks in connection with entertainment services and related musical recordings.

129. The public associates the RICH HOMIE QUAN Marks to be affiliated with, endorsed by or sponsored by Artist in connection with entertainment services. The RICH HOMIE QUAN Marks are a source identifier distinguishing Artist's services as an entertainer and artist.

130. Defendants are using Artist's RICH HOMIE QUAN Marks without Artist's authorization, permission or consent in connection with Defendants' advertising and business dealings in relation to the Artist in the entertainment services, which are likely to confuse the public as to the association, affiliation, sponsorship, or approval of Defendants by Artist. This conduct constitutes unfair competition and infringement of Artist's RICH HOMIE QUAN Marks.

131. Defendants' infringing use of the RICH HOMIE QUAN Marks violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendants have willfully and deliberately used in commerce words, terms, names, and/or false and misleading descriptions of fact that likely caused confusion and mistake as to the association, affiliation, sponsorship, or approval of Defendants by Artist.

132. Defendants' violations of the Lanham Act have caused and will continue to cause irreparable harm to Artist, for which Artist has no

adequate remedy at law. Unless enjoined, Defendants will continue their infringing use of Artist's RICH HOMIE QUAN Marks, further injuring Artist and confusing the public.

133. Defendants have received revenues and profits to which Defendants are not entitled (and to which Artist is entitled), and, also as a result of Defendants' infringing use of Artist's RICH HOMIE QUAN Marks, Artist has suffered damages for which Defendants are responsible.

## COUNT VIII

## GEORGIA DECEPTIVE TRADE PRACTICES ACT
**(O.C.G.A. § 10-1-370 *et seq.*)**

134. Plaintiff repeats and realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

135. Defendants' unauthorized use of Artist's RICH HOMIE QUAN Marks constitutes deceptive trade practices under the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 *et seq.*, in that Defendants have willfully and deliberately caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, certification, affiliation, connection, or association of Defendants by and to Artist.

136. Unless enjoined, Defendants will continue these deceptive trade practices, thereby deceiving the public and causing Artist immediate and irreparable injury for which it has no adequate remedy at law; and thus, entitling Artist to injunctive relief pursuant to O.C.G.A. § 10-1-373.

## COUNT IX

## UNJUST ENRICHMENT

137. Plaintiff repeats and realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

138. As established herein, Defendants have been enriched to Artist's financial detriment.

139. It is inequitable for Defendants to be enriched to Artist's detriment.

## COUNT X

## CONVERSION

140. Plaintiff repeats and realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

141. Defendants Henry, TIG and Fly Merchandise Enterprises converted the assets of Artist for their own use and benefit to the exclusion of the Artist.

142. As a direct and proximate result of Defendants' unlawful conduct, Artist has suffered damages in an amount to be determined at trial.

## COUNT XI

## ACCOUNTING

143. Plaintiff repeats and realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

144. TIG has continuously failed to provide accurate and complete accountings to Artist for the exploitation of Artist's recordings and other monies owed to Artist.

145. Fly Merchandise Enterprises has failed to provide accurate and complete accountings to Artist for the exploitations of Artist's assets regarding monies owed to Artist.

146. In March 2013, Henry, as an authorized representative of TIG, offered Artist's manager, Corey Lamar, one-half of TIG's Ancillary Share.

147. Henry, on behalf of TIG, and Corey Lamar relied and acted consistent with that agreement and going forward, each received one-half of TIG's Ancillary Share.

148. Consistent with the aforementioned agreement between TIG and Corey Lamar, on May 9, 2013 and bi-weekly thereafter, the TIG Ancillary Share of monies generated by Artist were split evenly between Corey Lamar and TIG – with each earning 10% of Artist's gross receipts earned from entertainment activities as provided in the TIG Memorandum.

149. At all relevant times, TIG, Henry and Corey Lamar acted consistent with their agreement to equally share the TIG Ancillary Share.

150. Henry and TIG have improperly assessed Corey Lamar's 10% of the Ancillary Share as an expense against Artist's revenue under the TIG Memorandum. This improper assessment has caused in excess of $450,000 of damages to Artist.

151. Plaintiff will be irreparably harmed from the conduct of Defendants.

152. Plaintiff has no adequate remedy or speedy remedy at law to correct or redress the unlawful deprivation of Plaintiff's rights by Defendants.

153. Unless the conduct of Defendants are enjoined requiring all assets of Defendants related to Artist to be accounted for and Defendants are compelled to provide access to the books and records of Defendants to Plaintiff, Plaintiff will continue to suffer irreparable injury.

## COUNT XII

## ATTORNEYS' FEES AND COSTS

154. Plaintiff repeats and realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

155. Defendants have acted in bad faith and have been unnecessarily litigious and have acted in bad faith in this action are liable for attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11.

**WHEREFORE**, Plaintiff prays:

a. that the Court enter judgment in favor of Plaintiff against Defendants as requested herein;

b. that the Court declares the TIG Memorandum rescinded, and its covenants unenforceable;

c. that the Court grant Artist an equitable title and claim to assets purchased with funds due Artist from the partnership profits;

d. that Plaintiff recover his reasonable attorneys' fees and expenses of litigation;

e. that Plaintiff recover prejudgment interest at the rate allowed by law; and

f. that Plaintiff recover such other and further relief as is just and proper.

Respectfully submitted this 5th day of August, 2015.

/s/ Brianna E. Williams
BRIANNA E. WILLIAMS
Georgia State Bar No. 226344
**MÉLANGE | A WILLIAMS FIRM**
1170 Peachtree Street, Suite 1200
Atlanta, Georgia 30309
Telephone: 404.885.5800
Brianna@themelangefirm.com

/s/ Leron E. Rogers, Esq.
LERON E. ROGERS
Georgia State Bar No. 482620
JONATHAN D. GOINS
Georgia State Bar No. 738593
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
1180 Peachtree Street NE, Suite 2900
Atlanta, Georgia 30309
Telephone: 404.418.7166
Leron.Rogers@lewisbrisbois.com
Jonathan.Goins@lewisbrisbois.com
Counsel for Plaintiff Dequantes Lamar