IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DEQUANTES LAMAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION FILE NO. |
| ) | 1:15-cv-02775-TCB |
| THINK IT'S A GAME ) | |
| ENTERTAINMENT, LLC; FLY ) | |
| MERCHANDISE ENTERPRISES, ) | |
| LLC and GIRVAN HENRY, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**AMENDED COUNT X IN COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiff Dequantes Lamar ("Artist"), and pursuant to the Order of this Court dated October 21, 2015 which required that he file an amendment to the Complaint [Doc. No. 1] to correct deficiencies in Count X of the Complaint for Conversion, hereby respectfully amends such Count X, which shall now read as follows. (Plaintiff employs alphanumeric designations to the paragraphs of this Amendment so as not to unnecessarily affect the existing number of those counts of the Complaint not amended hereunder.)

1

## COUNT X

## CONVERSION

140. Artist repeats and realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

141. The TIG Memorandum is unenforceable as a contract for several independent reasons.

141.a  The TIG Memorandum is an unenforceable "agreement to agree" in the future. Among other reasons which appear on the face of the TIG Memorandum, Section 12 of the Agreement expressly states that "The parties hereto intend to execute a more formal agreement concerning the subject matter hereof which shall embody all of the material terms and conditions set forth herein. However, unless and until such formal long-form agreement is executed, this Agreement shall remain binding and in full force and effect…" The parties' thus expressed their intent that the TIG Memorandum was not complete and that additional terms were to be negotiated is plain.

141.b.  As another of several bases showing that it is an unenforceable agreement to agree, the TIG Memorandum purports to oblige Artist to allow TIG "in its sole discretion, to furnish [Artist's] exclusive Services to *any* Distributors and third parties" and that Artist "further agree[s] to execute any inducement letter[s]

providing such direct rights and standard protections to any applicable third parties in [TIG's] sole discretion."

141.c. The terms "direct rights and standard protections" are not defined in the TIG Memorandum. Thus, the TIG Memorandum purports to obligate Artist to agree in the future to such undisclosed terms.

141.d. The TIG Memorandum refers to an "Initial Period" and an "Option Period." The Initial Period is undefined. Rather, in Section 2.a., the TIG Memorandum states: "Initial Period": During the Initial Period, you will record no less than fifteen [15] Masters, technically and commercially satisfactory to the Company, from which Company will endeavor to select no less than ten [10] Masters to constitute an 'Album.'" Thus, while the activities purportedly envisioned to take place "[d]uring the Initial Period" are discussed, the actual "Initial Period" is not defined, has an indeterminate ending date, and cannot be cured by parole evidence.

141.e. The TIG Memorandum, in Section 2.b. states: "Option Periods(s): You grant Company the sole right to extend the Term by as many as five [5] consecutive Option Periods, each beginning immediately after the expiration of the prior Period (after you have fulfilled your delivery obligations <u>and other obligations</u> to the Company in the prior Period.)" (emphasis supplied). This provision is also fatally vague and cannot be cured by resort to parole evidence.

141.f. The TIG Agreement cannot be enforced by this Court, due to its character as an agreement to agree and due to its fatal and incurable vagueness. Any alleged rights that may have been purportedly granted under the TIG Memorandum were thus revocable at the will of Artist.

141.g.  By Letter dated March 27, 2015, through his counsel Brianna E. Williams, Artist communicated that he "hereby terminates his relationship with TIG - effective immediately." In that letter, Williams demanded payment of all royalties owed. On June 2, 2015, Artist met with Defendant Henry wherein he demanded payment of monies owed. Artist, through his counsel Brianna E. Williams, again demanded payment on June 15, 2015. Despite Artist's demand, Defendants never paid Artist.

141.h.  To the extent that the Agreement purported to contain any conveyances of copyrights of existing compositions, such conveyances were ineffective for several valid and independent reasons, including the absence of any binding writing under 17 U.S. Code § 204 that actually identified the alleged copyrights transferred, and the failure of consideration to support any such transfer.

141.i.  The TIG Agreement also did not constitute any conveyance of copyrights to works created by Artist subsequent to the date of the TIG Agreement. The TIG Memorandum is unenforceable and thus conveys no rights. Even assuming

that the TIG Memorandum could be a valid contract in some aspects, it purports to vest rights to Masters and "all work created and performed" by Artist initially in TIG on a claimed "work-for-hire-basis." <u>See</u> TIG Memorandum at Section 8. However, Artist was not an employee. No particular work was "specially commissioned or commissioned for use," nor were the compositions authored by Artist and sound recordings among the types of works for which a work made for hire agreement may be used, as defined by 17 U.S. Code § 101. As such, Artist continues to own all copyrights in his compositions whether created prior to the TIG Agreement or during the purported term thereof.

141.j. Defendants have no right to retain, yet have unlawfully deprived Artist of lawful possession of and (at a minimum) have now converted the following assets in the form of identifiable funds to which Artist has the right to possess and to which no implied or express license authorizing Defendants to retain them exists:

1. All income received from the sale of "Flex (Ooh, Ooh, Ooh) [KE On the Track Remix]" which was released on iTunes on August 4, 2015;

2. All income received from the sale of "Flex (Ooh, Ooh, Ooh) [DJ Phyre Remix]" which was released on iTunes on August 4, 2015;

3. All income received from the sale of "Flex (Ooh, Ooh, Ooh) [K Theory Remix]" which was released on iTunes on August 4, 2015;

 4. All income received from the sale of "Flex (Ooh, Ooh, Ooh) [Mr. W & Lady a Remix]" which was released on iTunes on August 4, 2015;

 5. All income received from the sale of "Flex (Ooh, Ooh, Ooh) [Opium & Daniels Remix]" which was released on iTunes on August 4, 2015;

 6. All income received after March 27, 2015 from the sale of "Flex (Ooh, Ooh, Ooh)" which was released on iTunes on February 10, 2015;

 7. All income received after March 27, 2015 from the sale of "I Promise I Will Never Stop Going In (Deluxe Edition)" which was released on iTunes on March 24, 2014;

 8. All income received after March 27, 2015 from the sale of "Still Goin In - Reloaded" which was released on iTunes on April 30, 2013;

 9. All income received after March 27, 2015 from the sale of "Type of Way" which was released on iTunes on August 22, 2013;

 10. All income received after March 27, 2015 from the sale of "I Go In On Every Song" which was released on iTunes on July 9, 2013; and

 11. All income received after March 27, 2015 from the exploitation of Artist's image and music. Artist is aware that TIG received at least $282,104.63 from recording income and licensing fees for the period beginning April 1, 2015 through June 30, 2015. Although Artist has not received an accounting since June 30, 2015,

said income received by TIG since June 30, 2015 to date is identifiable and determinable.

142. As a direct and proximate result of Defendants' unlawful conduct as set forth herein, Artist has suffered damages in an amount to be determined at trial.

Except as set forth herein, all other allegations of the Complaint remain as filed.

Respectfully submitted, this 4th day of November 2015.

                              Attorneys for Plaintiff:

                              s/Brianna E. Williams
                              Georgia State Bar No. 226344
                              MÉLANGE | A WILLIAMS FIRM
                              1170 Peachtree Street, Suite 1200
                              Atlanta, Georgia 30309
                              Telephone: 404.885.5800
                              brianna@themelangefirm.com

                              s/Albert A. Chapar, Jr.
                              Georgia State Bar No. 120940
                              The Chapar Firm, LLC
                              945 Bank Street, Suite B
                              Conyers, Georgia 30012
                              Telephone 770.483.4115
                              achapar@chaparlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on November 4, 2015, a true and correct copy of the foregoing **AMENDED COUNT X IN COMPLAINT FOR DAMAGES** has been filed with the U.S. District Court's CM/ECF System and that pursuant thereto, a copy of this pleading has been served upon the following persons by electronic mail:

Hayden Pace, Esq.
Stokes Wagner Hunt Martz & Terrell, ALC
One Atlanta Center, Suite 2400
1201 W. Peachtree Street NW
Atlanta, Georgia  30309
hpace@stokeswagner.com

Attorneys for Plaintiff:

s/Brianna E. Williams
Georgia State Bar No. 226344
MÉLANGE | A WILLIAMS FIRM
1170 Peachtree Street, Suite 1200
Atlanta, Georgia 30309
Telephone: 404.885.5800
brianna@themelangefirm.com

s/Albert A. Chapar, Jr.
Georgia State Bar No. 120940
The Chapar Firm, LLC
945 Bank Street, Suite B
Conyers, Georgia 30012
Telephone 770.483.4115
achapar@chaparlaw.com